# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action Number |
| | ) | 12-00085-01-CR-W-DGK |
| Ronell E. Newman, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is the MOTION TO SUPPRESS EVIDENCE (Doc. #15) filed on June 15, 2012, by defendant Ronell E. Newman ("Newman"). On October 3, 2012, the undersigned held an evidentiary hearing on Newman's motion. Newman was present and represented by his counsel, Federal Public Defender Larry C. Pace. The government was represented by Special Assistant United States Attorney Sydney E. Sanders. At the evidentiary hearing, five witnesses testified: Detective Charles Bax, Officer Robert Evans, Detective Elizabeth Gentry, Detective Wesley Harris, and Officer John Pickens, all with the Kansas City, Missouri Police Department. Additionally, the following exhibits were admitted into evidence:

| Number | Description |
|---|---|
| Gov't. #1 | Area map |
| Gov't. #2 | Miranda waiver |
| Gov't. #3 | Detective Investigative Report |

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

## PROPOSED FINDINGS OF FACT

1. On November 14, 2011, Detective Elizabeth Gentry was working on an undercover drug investigation on behalf of the Kansas City Missouri Police Department. Tr. at 4-5.

2. Prior to that date, Det. Gentry had become aware of an individual known as "Pinky" who was selling narcotics from a pink Saturn automobile. Tr. at 5-6.

3. At approximately 3:00 p.m. on November 14, 2011, an informant provided Det. Gentry with a telephone number for contacting "Pinky." Tr. at 6.

4. Det. Gentry called the telephone, spoke with a female, and arranged to purchase four bags of crack cocaine near a pawn shop on Independence Avenue in Kansas City (an area known to law enforcement personnel as a high drug crime area). Tr. at 7-8, 19-20, 32.

5. Det. Gentry then traveled to the location on Independence Avenue in an undercover vehicle. Tr. at 8.

6. In addition, as per standard procedure, a surveillance team was placed near the location set for the drug buy. Tr. at 8-10, 18, 30-32.

7. The surveillance team included Detective Wesley Harris of the Kansas City, Missouri Police Department. Tr. at 28-30.

8. Upon arriving at the location, Det. Gentry and the surveillance team observed a pink Saturn automobile already parked in a parking lot at the location set for the drug buy. Tr. at 10, 33.

9. Det. Gentry then entered into the parking lot on Independence Avenue and called the telephone number again. Tr. at 11, 17, 33-34.

10. A female answered the telephone and asked Det. Gentry: "Are you white?" Tr. at 11, 33-34.

11. When Det. Gentry said that she was white, the female ended the call and the pink Saturn automobile pulled out of the parking lot and left the scene. Tr. at 11, 33-34.

12. Det. Gentry then instructed the surveillance team to follow the pink Saturn automobile and stop the vehicle. Tr. at 13.

13. Det. Harris followed the pink Saturn automobile until he saw the vehicle stop near 29th Street and Prospect in Kansas City. Tr. at 34-35, 54, Gov't Ex. 1.

14. Det. Harris then observed a pedestrian leaning into an open window of the pink Saturn automobile engaging in what appeared to Det. Harris to be a drug purchase transaction. Tr. at 35-36, 65.

15. Det. Harris radioed this information (including his belief that a drug transaction was in progress) to other uniformed officers following the pink Saturn automobile. Tr. at 36, 66, 80.

16. In addition, Det. Harris communicated to the uniformed officers following the pink Saturn automobile that the license plate on the Saturn was expired. Tr. at 76.

17. Two of the uniformed officers involved in following the pink Saturn automobile were Officer Robert Evans and Officer John Pickens of the Kansas City, Missouri Police Department. Tr. at 50-53, 57-58, 78-80.

18. Det. Harris and Det. Gentry did not participate in the actual law enforcement confrontation with the pink Saturn automobile and its occupants in an effort to preserve their ability to perform undercover investigations. Tr. at 37.

19. As Officer Evans and Officer Pickens approached the parked pink Saturn automobile they also observed a man leaning into the open passenger window of the vehicle. Tr. at 55-56, 65, 81.

20. Approaching the parked pink Saturn automobile, Officer Evans activated his emergency lights and siren. Tr. at 56-57.

21. Upon seeing the police vehicle, the pedestrian immediately starting walking away from the pink Saturn automobile. Tr. at 56, 65, 81.

22. Officers Evans and Pickens did not immediately approach the parked pink Saturn automobile because they observed a man in the passenger seat of the vehicle stuffing an item into his pants while ignoring the officers' command to show his hands and step out the vehicle. Tr. at 58-59, 67-69, 82-83.

23. Eventually, the passenger exited the pink Saturn automobile and was placed in handcuffs by Officer Evans for officer safety concerns. Tr. at 59, 69.

24. Officer Evans then conducted a frisk of the passenger and felt an abnormal lump in the passenger's pants that Officer Evans recognized from experience to be a bag of crack cocaine. Tr. at 60, 70-72.

25. The passenger then tried to pull away from Officer Evans and became belligerent. Tr. at 60-61, 73, 97.

3

26. Officer Evans wanted to avoid a physical altercation at that point, so he sat the passenger down on the street to await the arrival of additional officers to assist in a search of the passenger's person. Tr. at 61, 72-73.

27. Eventually, Officer Pickens assisted Officer Evans by placing the passenger in a wrist lock while Officer Pickens attempted to retrieve the item felt in the passenger's pants. Tr. at 61, 84.

28. The passenger continued to resist so both officers put the passenger in a wrist lock and placed the passenger against the vehicle. Tr. at 61, 84.

29. At that point, Officer Evans was able to retrieve from the passenger's pants, a clear plastic bag containing numerous other clear plastic bags each containing a white substance. Tr. at 61, 73, 84-85.

30. Officer Pickens field tested the substance and obtained a positive result for crack cocaine. Tr. at 62, 85.

31. The passenger, ultimately identified as Newman, was then placed under arrest for possession of a controlled substance. Tr. at 62.

32. Det. Gentry was the contacted and asked to call the number she obtained from the informant. Tr. at 14, 86.

33. When Det. Gentry made the call, a cell phone in the pink Saturn automobile rang. Tr. at 14, 86

34. Newman was subsequently transported to police headquarters and met with Detective Charles Bax of the Kansas City, Missouri Police Department. Tr. at 103-04.

35. Prior to interviewing Newman, Detective Bax advised Newman of his *Miranda* rights and Newman waived those rights and signed a written waiver form. Tr. at 104-06

36. During the ensuing interrogation, Newman made inculpatory statements. Tr. at 107-08.

**PROPOSED CONCLUSIONS OF LAW**

In his motion to dismiss, Newman raises a single issue, namely that evidence in this case must be suppressed because Officer Evans conducted an unconstitutional warrantless search of Newman (which also requires suppression of Newman's subsequent statements to law enforcement as proverbial "fruit of the poisonous tree").  Certainly, the Fourth Amendment provides that "the right of the people to be secure in their persons, houses,[1] papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. CONST. amend. IV. As made clear in the Fourth Amendment, however, the constitution does not forbid all searches and seizures, but only <u>unreasonable</u> searches and seizures.  *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446 (1960).  Nonetheless, as the United States Supreme Court pointedly noted over one hundred years ago:

> No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or

---

[1] The stop of an individual in an automobile raises many of the same concerns as a search of an individual's home.

> Automobile travel is a basic, pervasive, and often necessary mode of transportation to and from one's home, workplace, and leisure activities. Many people spend more hours each day traveling in cars than walking on the streets. Undoubtedly, many find a greater sense of security and privacy in traveling in an automobile than they do in exposing themselves by pedestrian or other modes of travel. Were the individual subject to unfettered governmental intrusion every time he entered an automobile, the security guaranteed by the Fourth Amendment would be seriously circumscribed. As *Terry v. Ohio* recognized, people are not shorn of all Fourth Amendment protection when they step from their homes onto the public sidewalks.  Nor are they shorn of those interests when they step from the sidewalks into their automobiles.

*Delaware v. Prouse*, 440 U.S. 648, 662-63, 99 S.Ct. 1391, 1400-01 (1979).

5

> interference of others, unless by clear and unquestionable authority of law.

*Union Pacific Railroad Co. v. Botsford*, 141 U.S. 250, 251, 11 S. Ct. 1000, 1001 (1891).

In many search and seizure scenarios, the question of legal authority (as well as reasonableness) is presumptively satisfied by a judicially-issued warrant. In this case, of course, Officer Evans did not have a warrant. However, over the years, many exceptions to the warrant requirement have been recognized. For instance, and pertinent to the issue in this case, in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968), the Supreme Court held that a law enforcement officer can stop and briefly detain a person for investigatory purposes, even without a warrant, if the officer has a reasonable suspicion – supported by articulable facts – that criminal activity "may be afoot," even if the officer lacks probable cause for an arrest. *Id*. at 30, 88 S. Ct. at 1884. However, the officer conducting such an investigatory stop must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Id*. at 27, 88 S.Ct. at 1883. Moreover, the mere fact that an officer's suspicion or hunch, in fact, was well-founded is not dispositive for a constitutional analysis; rather, the Fourth Amendment requires "some level of objective justification for making the stop." *INS v. Delgado*, 466 U.S. 210, 217, 104 S. Ct. 1758, 1763 (1984).

The rights protected by the Fourth Amendment are implicated in this case by the decision to stop and detain the pink Saturn automobile and thereafter to detain Newman and the Saturn's driver. *Delaware v. Prouse*, *supra*, 440 U.S. at 653, 99 S. Ct. at 652-53. However, it is well-settled that "[a]n investigative stop does not violate the Fourth Amendment if the police have a reasonable suspicion that the vehicle or its occupants are involved in criminal activity." *United States v. Bell*, 183 F.3d 746, 749 (8th Cir. 1999).

6

Even though an officer may have justification to initiate a traffic stop, the ensuing detention of a vehicle's occupants "must not be excessively intrusive in that the officer's actions must be reasonably related in scope to the circumstances justifying the initial interference." *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999). In addition, and germane to this case, it is well-settled that a vehicle's passenger, as well as its driver, is seized by a law enforcement officer during a valid traffic stop. *Brendlin v. California*, 551 U.S. 249, 127 S.Ct. 2400, 2403-08 (2007). Moreover, an officer may order both the driver and passenger to exit the vehicle in the interests of officer safety. *Maryland v. Wilson*, 519 U.S. 408, 413-15, 117 S.Ct. 882, 885-86 (1997); *Pennsylvania v. Mimms*, 434 U.S. 106, 111-12, 98 S.Ct. 330, 333 (1977). Additionally, the Supreme Court has observed that, during a routine traffic stop, police officers "may order out of a vehicle both the driver and any passengers [and] perform a 'patdown' of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous." *Knowles v. Iowa*, 525 U.S. 113, 118, 119 S.Ct. 484, 488 (1998). Finally, if an officer's suspicions become heightened during the course of such routine traffic stop, the officer may be justified in expanding the scope of the investigation. *United States v. Coleman,* --- F.3d ---, ---, 2012 WL 5439287, op. at *3 (Nov. 8, 2012) ("[I]f the officer develops reasonable suspicion that other criminal activity is afoot, the officer may expand the scope of the encounter to address that suspicion."). More specifically:

> If during a traffic stop, an officer develops a reasonable, articulable suspicion that a vehicle is carrying contraband, he has justification for greater intrusion unrelated to the traffic offense.

*United States v. White*, 42 F.3d 457, 460 (8th Cir. 1994).

7

In this case, the Court finds that Officers Evans and Pickens had the requisite reasonable suspicion to stop a vehicle when they obtained information that Detective Harris was observing a likely drug transaction and, alternatively, based on the information they had that the license for the pink Saturn automobile had expired. Furthermore, the Court finds that Officer Evans was justified in asking Newman to step out of the vehicle to be questioned. Moreover, Officer Evans was justified in (initially and briefly) hand-cuffing and frisking Newman in the interests of officer safety in light of Newman's conduct at the initiation of the traffic stop (stuffing an unknown article into his pants, refusing to immediately obey the officer's directives).

The United States Supreme Court's decision in *Arizona v. Johnson*, 555 U.S. 323, 129 S. Ct. 781 (2009), is illustrative. In *Johnson*, the Court considered "the authority of police officers to 'stop and frisk' a passenger in a motor vehicle temporarily seized upon police detection of a traffic infraction." *Id*. at 326, 129 S. Ct. at 784. In *Johnson*, officers had stopped a vehicle with a license suspended due a failure to maintain insurance. *Id*. The stopped vehicle had three occupants. The officers requested identification from all of the occupants and, at that time, the officers noted that the back-seat passenger acted suspiciously and was dressed in clothing consistent with gang membership. *Id*. at 328, 129 S. Ct. at 785. The officers suspected that the passenger "might have a weapon on him." *Id*. The officers asked the passenger to exit the vehicle and then "patted him down for officer safety." *Id*. The frisk uncovered a gun on the passenger's person. *Id*.

Following his conviction on a gun-possession charge, the passenger appealed, arguing that the scope of a valid *Terry* stop did not permit the pat-down of vehicle passengers based on inquiries unrelated to the initial reason for the traffic stop. The *Johnson* Court, in a unanimous decision disagreed:

8

Case 4:12-cr-00085-DGK   Document 29   Filed 11/15/12   Page 8 of 10

> A lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation. The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop. Normally, the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave. An officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop.

*Id*. at 333, 129 S. Ct. at 788. The Court's summation in *Johnson* applies with equal force in this case:

> [A] traffic stop of a car communicates to a reasonable passenger that he or she is not free to terminate the encounter with the police and move about at will. Nothing occurred in this case that would have conveyed to [the defendant] that, prior to the frisk, the traffic stop had ended or that he was otherwise free to depart without police permission. [The officer] surely was not constitutionally required to give [the defendant] an opportunity to depart the scene after he exited the vehicle without first ensuring that, in so doing, [he] was not permitting a dangerous person to get behind [him].

*Id*.

In this case, the Court has no difficulty in finding that the hand-cuffing and frisking of Newman within the first few moments of the traffic stop did not measurably extend the duration of the stop. Given the reasonable suspicion of Officer Evans, his actions fall within the permissible scope of a lawful traffic stop as articulated by the Supreme Court in *Johnson*. Inasmuch as Officer Evans was entitled to conduct a pat-down search of Newman, his discovery of the crack cocaine being carried on Newman's person was constitutionally sanctioned.

Newman's sole argument for suppressing his subsequent incriminating statements to law enforcement officers is they are "fruit of the poisonous tree." *See*, *e.g.*, *Wong Son v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 415-16 (1963). Because the Court does not find any constitutional infirmary with the traffic stop and warrantless search of Newman, the Court will

9

not suppress Newman's later, *Mirandized* statements to Detective Bax as byproducts of any illegal law enforcement activity.

Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** Ronell E. Newman's *Motion to Suppress Evidence,* [Doc. 15] filed June 5, 2012.

Counsel are reminded that each has 14 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

                                          */s/ John T. Maughmer*
                                          **John T. Maughmer**
                                    **United States Magistrate Judge**

10

Case 4:12-cr-00085-DGK   Document 29   Filed 11/15/12   Page 10 of 10